# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5031 | **DATE** | 3/21/2002 |
| **CASE TITLE** | RONALD PATTERSON vs. SPRINT/UNITED MANAGEMENT COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] It is hereby ordered that defendant Sprint's motion for summary judgment is granted [8-1] and defendant Sprint's motion to strike is denied [8-1]. Enter Memorandum Opinion and Order. This case is terminated and all pending motions are stricken as moot. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 22 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD PATTERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| SPRINT/UNITED MANAGEMENT ) | 00 C 5031 |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | DOCKETED |
| ) | MAR 2 2 2002 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Patterson has sued his former employer Sprint/United Management Company ("Sprint") for sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Before the Court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, as well as defendant's motion to strike portions of plaintiff's Local Rule 56.1(b)(3)(A) statement.[1] For the reasons stated below, Sprint's motion for summary judgment is granted, and Sprint's motion to strike is denied.

### Facts

Sprint hired Ronald Patterson ("Patterson") in November 1989 as an Account Administrator. (Def.'s LR 56.1(a)(3) ¶ 5.) After being hired, Patterson received and read

---

[1] The Court denies Defendant's Motion to Strike Portions of Plaintiff's 56.1(b)(3)(A) Statement. The motion is denied on the basis that plaintiff properly supported the facts with citations to the record in his Amended Statement of Facts.

1

Sprint's handbooks, which detailed its sexual harassment policies. (*Id.* ¶ 14.) Within two years, Patterson was promoted to Supervisor and given responsibilities including supervising twelve workers. (*Id.* ¶ 12.) He was responsible for reporting to Michelle Weinberg ("Weinberg") and Roberta Winger ("Winger"). (*Id.* ¶ 18.)

Patterson claims that conversations with his co-workers and supervisors were both friendly and open during his employment. (Pl.'s LR 56.1(b)(3)(B) ¶ 21.) Specifically, Patterson claims that some of the conversations at Sprint were explicit, concerning the sexual predilections of his co-workers. (Def.'s LR 56.1(a)(3) ¶ 37.) Patterson was involved with sexually oriented conversations with various employees of Sprint; he also participated in explicit conversations with his supervisors. (*Id.*) Patterson refers to a game involving adding the words "in bed" to the language contained in fortune cookies with Weinberg and Winger during staff meetings, as an example of sexual banter in the workplace. (Pl.'s LR 56.1(b)(3)(A) ¶ 41.)

While employed with Sprint, Patterson became friends with Sherelda Alexander ("Alexander"). Patterson encouraged Alexander to apply for a position with Sprint, and later became her supervisor. (Pl.'s LR 56.1(b)(3)(B) ¶ 31.) During the course of their friendship and employment together, Patterson and Alexander shared many aspects of their lives, including intimate details. (*Id.* ¶ 33.) About a month after Patterson became Alexander's supervisor, she complained to Perry Cobbin ("Cobbin"), a lateral supervisor, concerning inappropriate comments Patterson had made. (*Id.* ¶ 35.) Alexander told Corbin that she no longer felt comfortable around Patterson as a result of comments he had made. (Def.'s LR 56.1(a)(3) ¶ 28.)

Cobbin reported Alexander's complaint to the Human Resources Department as is

required by Sprint's Sexual Harassment Policy. (*Id.* ¶ 29.) Mary Schetter ("Schetter"), Human Resources Manager, subsequently interviewed Patterson concerning Alexander's complaint. (*Id.* ¶ 31.) After completing her interview and investigation, Schetter reported her findings to Winger. (*Id.* ¶ 32.) Winger then decided to initiate a full investigation, consistent with Sprint's Sexual Harassment Policy. (*Id.* ¶ 33.)

As part of the ensuing full investigation into Alexander's allegations, Patterson was interviewed and prepared a signed statement in response to the allegations. In his statement Patterson admitted: (1) "making a sexual comment to Alexander"; (2) "singing an inappropriate song in Alexander's presence"; and (3) making an inappropriate comment about Weinberg's genitalia in Alexander's presence." (Def.'s LR 56.1(a)(3) ¶ 37.)

Upon review of the investigatory report, Winger decided to terminate Patterson. According to Winger, Patterson was terminated because he admitted making inappropriate sexual comments to his subordinates. (Pl.'s LR 56.1(b)(3)(B) ¶ 37.) Patterson's comments were determined to violate a number of Sprint's policies. (Def.'s LR 56.1(a)(3) ¶ 41.) These policies provide for the termination of any employee violating the provisions of any policy. (*Id.* ¶ 45.)

On January 6, 2000, Patterson was terminated in a meeting attended by Winger and Schetter. (*Id.* ¶ 46.) Patterson filed a charge of discrimination with the EEOC on February 18, 2000. (*Id.* ¶ 49.) In his complaint, Patterson claimed discriminatory termination on the basis of his sex. (Pl.'s LR 56.1(b)(3)(A) ¶ 50.) On May 31, 2000, the EEOC issued a right to sue letter to Patterson. (Def.'s LR 56.1(a)(3) ¶ 52.) On August 16, 2000, Patterson filed his complaint, alleging gender discrimination under Title VII. (*Id.* ¶ 53.)

## Discussion

Summary judgment is proper when a party in opposition to the motion does not make a sufficient showing establishing an essential element of its case that the party would bear the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating an absence of material facts, entitling it to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). After viewing the evidence in a light most favorable to the non-moving party a summary judgment motion should be granted when there are no issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Patterson may demonstrate discrimination in one of two ways. He may show direct evidence of discrimination or utilize the burden shifting method. *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 301 (7th Cir. 1996). Sufficient direct evidence of discrimination, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption. This evidence must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan v. Prudential Ins. Co.*, 141 F.3d 751, 760 (7th Cir. 1998) (quotations omitted). Patterson does not offer evidence of direct discrimination. He merely suggests Winger and Weinberg acted with discriminatory intent because he was the only one singled out for negative employment action as a result of the explicit conversations taking place at Sprint. In fact, Patterson stated in his deposition that at the time of his termination meeting, he did not believe he was being terminated as a result of his gender. (Def.'s LR 56.1(a)(3) ¶ 48.)

Thus, in order to prevail, Patterson must present evidence under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

4

Under the *McDonnell Douglas* approach, Patterson must first establish a *prima facie* case of discrimination. If he can establish such a case, the burden of production then shifts to Sprint to demonstrate some legitimate, non-discriminatory reason for terminating Patterson. *Id.* If Sprint meets its burden, the onus then lies with Patterson, "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In order to establish a *prima facie* case, Patterson must establish: (1) he is a member of a protected class; (2) he has suffered an adverse employment action; (3) he was meeting Sprint's legitimate performance expectations; and (4) Sprint treated similarly situated employees who are not in the protected class more favorably. *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 752 (7th Cir. 2000).

Patterson can establish the first element, *i.e.*, that he is a member of a protected class. "Title VII's prohibition of discrimination 'because of . . . sex' protects men as well as women." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting 42 U.S.C. § 2000e-2(a)(1)). Patterson has also established the second element of the *prima facie* case because it is undisputed that he was terminated.

More difficult for Patterson is proof of the third requirement, that he was meeting Sprint's legitimate performance expectations. "It is axiomatic that an employer may legitimately expect an employee to act professionally, with integrity." *Vasquez v. Fiserv CIR, Inc.*, No. 93 C 7817, 1995 WL 431249, at *8 (N.D. Ill. July 14, 1995). Part of an employer's legitimate expectations is also for its employees to adhere to the published employee guidelines and regulations. Sprint's Sexual Harassment Policy Handbook

5

explicitly prohibits inappropriate sexual harassment; any employee found to have engaged in sexual harassment or inappropriate conduct of a sexual nature will be subject to disciplinary action, up to an including termination. (Def.'s LR 56(a)(3) ¶ 45.)

Patterson admitted to making comments of a sexual nature in a letter produced as part of Sprint's investigation. (*Id.* ¶¶ 36, 37.) Patterson does not deny that he made inappropriate comments. In additions, he expresses awareness of Sprint's policies prohibiting such comments. (Pl.'s LR 56(b)(3)(B) ¶ 19.) He also admitted to making comments with sexual overtones to other employees. (*Id.* ¶ 23.) Patterson claimed that he felt comfortable making comments of a sexual nature to Alexander based on their relationship. (*Id.* ¶ 32.) Patterson's comfort in making inappropriate sexual comments is not at issue. Because Patterson admitted making certain comments and was found to have violated Sprint's sex harassment policy, it can be argued that he was not meeting the legitimate employment expectations of Sprint.

Patterson's claim is largely based on his impression that other similarly situated female employees were treated differently. Patterson claims Sprint discriminated against him because only he was terminated for participating in sexually explicit and inappropriate conversations and commentaries. The women who engaged in similar conduct were not disciplined. However, Patterson has neglected an important factor. A complaint was made by Alexander against Patterson; there is nothing in the record showing that a complaint, by Alexander or anyone else, was ever lodged against Wienberg, Winger, Cobbin, or Schetter. (Pl.'s LR 56.1(b)(3)(B) ¶ 35.)

Certainly Patterson fails to satisfy the forth element of a *prima facie* case. Patterson suggests that an employer must apply its policies fairly to all employees, claiming that Sprint

"targeted one male rather than several females who participated in conversations of a sexual nature." (Pl.'s Mem. Opp. Summ. J. at 10.) However, Patterson seems to ignore the fact that he was the subject of a complaint to Sprint management by Alexander. Based on the record before the Court, the other employees to whom Patterson refers were not the subjects of complaints of harassment. A complaint to management must be raised to trigger Sprint's requirement for a sexual harassment investigation. (Def.'s LR 56.1(a)(3) ¶ 29.) The investigation was initiated only after Cobbin received a complaint about Patterson from Alexander. (*Id.* ¶ 31.) Patterson was terminated as a result of the investigation. (*Id.* ¶ 38.) That no other employees were terminated for their explicit comments or conversations is not probative of discrimination because none of the others were the subject of a complaint.

In order for Patterson to raise a colorable claim that other employees were treated differently, he must point to truly similarly situated employees. *Greensdale v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 862 (7th Cir. 1997) (finding that when the employee's co-workers complained about him, but not vice-versa, there was no discrimination). Nowhere in his complaint or response memorandum does Patterson point to facts supporting his claim. There is no evidence of complaints or investigations into the actions or comments of other Sprint employees. There is no evidence that complaints against female employees who participated in similar sexually explicit conversations were not acted upon in precisely the same manner. Nor is there any evidence that Patterson's supervisors, some of whom appear to have knowledge of his sexually explicit conversations, took any action against him prior to receiving a complaint.

Therefore, this Court finds that Patterson has failed to raise a *prima facie* case demonstrating gender discrimination under Title VII. From the facts presented, Patterson

7

was not singled out for discrimination by his supervisors. He was the only employee who was the subject of a complaint for his participation in sexually explicit conversations. There are no questions of material fact that would suggest discriminatory intent by of those responsible for the decision to terminate Patterson.

## Conclusion

For the reasons set forth in this Memorandum Opinion and Order, defendant Sprint's motion for summary judgment is granted [doc. no. 8-1] and defendant Sprint's motion to strike is denied [doc. no. 18-1].

**SO ORDERED:**　　　　　　　　　　　ENTER. 3/21/02

　　　　　　　　　　　　　　　　　　　　　　　*Ronald A. Guzman*
　　　　　　　　　　　　　　　　　　　　　　**HON. RONALD A. GUZMAN**
　　　　　　　　　　　　　　　　　　　　　　**United States Judge**